**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| BIEN DONG SEAFOOD CO., LTD. and NTSF SEAFOODS JOINT STOCK COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | Court No. 26-03941<br>Unassigned |

## COMPLAINT

Pursuant to Rule 3(a)(2) of the Rules of the United States Court of International Trade, Plaintiffs, Bien Dong Seafood Co., Ltd. ("Bien Dong") and NTSF Seafoods Joint Stock Company ("NTSF"), by and through their counsel, allege and state as follows:

## JURISDICTION

1. Plaintiffs bring this action pursuant to, and in accordance with, section 516A(a)(2)(A)(i)(II) of the Tariff Act of 1930, as amended (codified at 19 U.S.C. § 1516a(a)(2)(A)(i)(II), contesting the final results issued by the U.S. Department of Commerce ("Commerce") in *Certain Frozen Fish Fillets From the Socialist Republic of Vietnam: Final Results and Rescission, in Part, of Antidumping Duty Administrative Review; 2023–2024*, 91 Fed. Reg. 52,286 (Dep't of Commerce Aug. 13, 2026) ("*Final Results*"), and accompanying Issues and Decision Memorandum (Aug. 10, 2026) ("*IDM*"). This Court has jurisdiction over this matter under 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2).

## STANDING

2. Plaintiffs, Bien Dong and NTSF, are foreign producers and exporters of the

merchandise examined in the antidumping duty administrative review contested here. Plaintiffs therefore are interested parties within the meaning of 19 U.S.C. § 1677(9)(A). As interested parties that actively participated as mandatory respondents in the underlying administrative proceeding, Plaintiffs have standing pursuant to 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS

3. The *Final Results*, which are being challenged herein, were published in the Federal Register on August 13, 2026. *See* 91 Fed. Reg. 56861. On September 11, 2026, within 30 days after the *Final Results* were published in the Federal Register, Plaintiffs filed a summons to initiate this action. *See* ECF No. 1. Accordingly, this action was commenced within the period specified in 19 U.S.C. § 1516a(a)(2)(A)(ii). This Complaint is being filed within 30 days of the filing of the summons. Therefore, according to the provisions of 19 U.S.C. § 1516a(a)(2)(A) and Rule 3(a)(2) of the Rules of the U.S. Court of International Trade, this action has been timely brought.

## STANDARD OF REVIEW

4. This Court reviews final results issued by Commerce pursuant to 19 U.S.C. § 1675 to determine whether they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

## PROCEDURAL HISTORY

5. On August 12, 2003, Commerce published the antidumping duty ("AD") order on frozen fish fillets from Vietnam. *See Notice of Antidumping Duty Order: Certain Frozen Fish Fillets from the Socialist Republic of Vietnam*, 68 Fed. Reg. 47909 (August 12, 2003) ("*Order*").

6. In August 2024, Plaintiffs timely requested that Commerce conduct an administrative review of each company's own export sales during the period August 1, 2023 to July 31, 2024. On October 18, 2024, Commerce published notice of the initiation of the twenty-first administrative review in the Federal Register. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 89 Fed. Reg. 77,079 (Sep. 20, 2024).

7. On January 30, 2025, Commerce selected Bien Dong and NTSF as mandatory respondents in the administrative review and issued each the Initial Questionnaire.

8. On May 29, 2025, Bien Dong and NTSF submitted surrogate value information to be used to value the factors of production pursuant to 19 U.S.C §1677b(c)(4) and 19 C.F.R. §351.408. On the same day, the Petitioner, the Catfish Farmers of America, also submitted surrogate value information.

9. On January 12, 2026, Plaintiffs and the Petitioner separately filed additional surrogate value information.

10. On February 5, 2026, Commerce reached its preliminary results of review and calculated weighted-average dumping margins of $0.29 per kilogram and $0.07 per kilogram for Bien Dong and NTSF, respectively. *See Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Preliminary Results of Antidumping Duty Administrative Review; Preliminary Recission of Administrative Review; and Recission of Administrative Review, in Part; 2023-2024*, 91 Fed. Reg. 6192 (Feb. 11, 2026) ("*Preliminary Results*") and accompanying *Decision Memorandum for the Preliminary Results of Antidumping Duty Administrative Review of Certain Frozen Fish Fillets from the Socialist Republic of Vietnam; 2023-2024*, (Feb. 5, 2026) ("*PDM*").

11. On April 15, 2026, case briefs in response to the *Preliminary Results* were submitted by Petitioner and Plaintiffs. On May 7, 2026, rebuttal case briefs were filed by Petitioner and Plaintiffs.

12. On August 13, 2026, Commerce published the *Final Results* and calculated weighted-average antidumping duty rates of $1.00 per kilogram and $0.38 per kilogram for Bien Dong and NTSF, respectively.

**ISSUES PRESENTED BY THE ACTION AND**
**PLAINTIFFS' STATEMENT OF CLAIMS**

13. In the following respects, and for other reasons apparent from the record of the administrative proceeding, Commerce's *Final Results* are unsupported by substantial record evidence and/or are otherwise not in accordance with law.

**COUNT ONE**

14. Paragraphs 1 through 13 are incorporated herein by reference.

15. In the *Final Results* and accompanying *IDM*, Commerce declined to rely on two audited financial statements submitted by Plaintiffs of Indonesian producers of comparable merchandise, PT Dharma Samudera Fishing Industries Tbk ("Dharma" or "DSFI") and Morenzo Abadi Perkasa Tbk ("Morenzo") to determine the surrogate values for overhead, SG&A, and profit. *IDM*, at Comment 8, page 39. Commerce declined to rely on the statements of Dharma and Morenzo finding that record evidence indicates that Dharma and Morenzo received countervailable subsidies in the form of preferential lending. *Id.*

16. Commerce's finding that Dharma and Morenzo benefited from countervailable subsidies was not supported by substantial record evidence. In addition, Commerce's decision was not in accordance with law as it was both inconsistent with Commerce practice and with

prior decisions by Commerce regarding the allegedly countervailable lending program.

**COUNT TWO**

17. Paragraphs 1 through 16 are incorporated herein by reference.

18. Commerce's continued reliance on the financial statement of PT Japfa Comfeed Indonesia Tbk ("Japfa Comfeed") to determine the surrogate values for overhead, SG&A, and profit was not supported by substantial evidence because its operations are such that it cannot reasonably be regarded a producer that is comparable to Bien Dong or NTSF or that its information constitutes the best available information.

**COUNT THREE**

19. Paragraphs 1 through 18 are incorporated herein by reference.

20. In the *Final Results*, Commerce miscalculated the surrogate ratios for overhead, SG&A, and profit derived from the financial statements of Toba Surimi Industries Tbk ("Toba Surimi"). *See IDM*, Comment 9. Commerce's treatment of certain line-items as overhead expense rather than materials, and its exclusion of other income from the calculation, was not supported by substantial evidence and otherwise not in accordance with law.

**COUNT FOUR**

21. Paragraphs 1 through 20 are incorporated herein by reference.

22. In the *Final Results*, Commerce determined the surrogate value for whole live fish, in part, on information from the Annual Study of the Status of Aquaculture in Indonesia with special reference to Pangasius hypophthalmus ("Kerala Study"). *See IDM*, Comment 1, page 13. Commerce's reliance on the Kerala Study as among the best information available to value whole live fish was not supported by substantial record evidence.

**COUNT FIVE**

23. Paragraphs 1 through 22 are incorporated herein by reference.

24. In the *Final Results*, Commerce determined the surrogate value for fish feed consumed at the farming stage, in part, on information from the Kerala Study. *See IDM*, Comment 1, page 12. Commerce's reliance on the Kerala Study as among the best information available to value fish feed was not supported by substantial record evidence.

**COUNT SIX**

25. Paragraphs 1 through 24 are incorporated herein by reference.

26. In the *Final Results*, Commerce determined the surrogate value for fish fingerlings consumed at the farming stage, in part, on information from the Kerala Study. *See IDM*, Comment 1, page 12. Commerce's reliance on the Kerala Study as among the best information available to value fish fingerling was not supported by substantial record evidence.

**COUNT SEVEN**

27. Paragraphs 1 through 26 are incorporated herein by reference.

28. In the *Final Results*, Commerce determined the surrogate value for fish feed consumed at the farming stage, in part, on information from the Kerala Study. *See IDM*, Comment 1, page 12. Commerce's reliance on the Kerala Study as among the best information available to value fish feed was not supported by substantial record evidence.

**COUNT EIGHT**

29. Paragraphs 1 through 28 are incorporated herein by reference.

30. In the *Final Results*, Commerce determined the surrogate value for head and bone fish waste using information from the Kerala Study. *See IDM*, Comment 1, page 15-16. Commerce's reliance on the Kerala Study as the best information available to value head and

bone by-products was not supported by substantial record evidence.

**COUNT NINE**

31. Paragraphs 1 through 30 are incorporated herein by reference.

32. In the *Preliminary Results*, Commerce determined the surrogate value for head and bone fish by-product using information from price quotes. *See PDM*, Comment 1, at 23. The surrogate value calculated in the *Preliminary Results* using the price quotes was overly broad when the same source possessed information specific to head and bone fish by-product that was more specific to the head and bone by-product of Plaintiffs. While Commerce's reliance in the *Preliminary Results* on the price quotes as a source for determining surrogate values for head and bone by-product was supported by substantial evidence, the overly inclusive values upon which Commerce relied from those price quotes was not the best available information because the same source possessed information specific to head and bone by-product.

33. While Commerce did not rely on these price quotes in the *Final Results*, Commerce should have relied on the price quotes to value head and bone fish waste and in so doing, calculated an average price relying only on the price quote information that was specific to head and bone by-products.

**COUNT 10**

34. Paragraphs 1 through 33 are incorporated herein by reference.

35. In the *Final Results*, Commerce determined the surrogate value for seven by-products—belly, bladder, broken meat, stomach, skin, fish fat, and fish trimmings—using information from the Kerala Study. *See IDM*, Comment 1, pages 13-14. Commerce's reliance on the Kerala Study as the best information available to value these seven by-products was not

supported by substantial record evidence.

## COUNT 11

36. Paragraphs 1 through 35 are incorporated herein by reference.

37. In the *Final Results*, Commerce determined the surrogate value for inland trucking freight and domestic brokerage and handling using information from the World Bank's 2022 Doing Business In Indonesia report. *See IDM*, Comment 4, pages 20-21. Commerce's reliance on the Doing Business In Indonesia report as the best information available to value inland trucking and domestic brokerage expenses was not supported by substantial record evidence.

## DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF

38. For the reasons stated above, Plaintiffs respectfully request that the Court:

(a) enter judgment in Plaintiffs' favor;

(b) declare that with respect to the issues raised in this Complaint, Commerce's determinations and all related findings and conclusions were not supported by substantial evidence and are otherwise not in accordance with law;

(c) remand these matters to Commerce for redetermination consistent with the Court's opinion; and

(d) provide such other relief as the Court deems just and proper.

Respectfully submitted,

/s/ Jonathan M. Freed
Jonathan M. Freed

**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE, Suite 500
Washington, DC 20003

Tel: (202) 223-3760
jfreed@tradepacificlaw.com

*Counsel for Plaintiffs*

Dated: October 9, 2026